Ted BERNARDO, doing business as Colonial Motors; Ted Bernardo; Debra Bernardo, Plaintiffs–Appellants,

v.

NORTHLAND INSURANCE COMPANY, Defendant–Appellee.

No. 94–1205.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1994.

Decided Jan. 19, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 7, 1995.*

James F. Haffner, St. Louis, MO, argued, for appellant.

Edward S. Meyer, St. Louis, MO, argued, for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, HENLEY and JOHN R. GIBSON, Senior Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Ted and Debra Bernardo appeal from the district court's entry of summary judgment against them on their uninsured motorists claim against Northland Insurance Company. At the time of the accident from which the claim arose, Ted Bernardo, a used car dealer, was driving a 1981 Buick. The certificate of title to this car, however, had not been deliv-

* McMillian, Fagg, and Beam, Circuit Judges, would grant the suggestion for rehearing en banc.

ered to him. The magistrate judge[1] held that Bernardo was not the owner of the Buick and that the Northland uninsured motorist coverage applied only to vehicles owned by Bernardo. The Bernardos maintain that it is against Missouri law and public policy for insurers to exclude non-owners from uninsured motorists coverage with respect to autos for which there is liability coverage. Because we believe that the Bernardos are correct, we reverse the judgment of the district court and remand for further proceedings.

## I.

Bernardo did business as Colonial Motors, and Northland issued Bernardo a commercial auto policy that included garage, liability, and uninsured motorists coverage. The liability coverage extended to "any auto," but the uninsured motorist coverage extended only to "owned autos subject to a compulsory uninsured motorists law."

In February 1991, Jerry Ackerman Toyota sold Colonial a 1981 Buick Park Avenue for $1,500. Bernardo paid $500 and took physical possession of the Buick, but Ackerman Toyota retained the certificate of title, and was to retain it until Bernardo paid the remainder of the purchase price. On March 13, the Bernardos were driving the Buick and were involved in an automobile accident.

■ The Bernardos brought this action against Northland, alleging that they were forced off the road by a phantom uninsured driver and entitled to recover under the Northland policy. The district court entered summary judgment in favor of Northland, and the facts set forth above were recited as undisputed in the magistrate judge's order granting summary judgment. The magistrate judge held that because there was no transfer of title, Bernardo did not own the automobile, and accordingly, it was not covered under the uninsured motorists coverage of the Northland policy which applied only to owned automobiles. We review district court determinations of state law de novo, giving

their decisions no deference. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

## II.

■ The Northland policy is void as against Missouri law and public policy because it attempts to limit uninsured motorist coverage to owned vehicles only. Missouri Revised Statute § 379.203 requires "that all policies of liability insurance must also include uninsured motorist coverage to 'persons insured thereunder.' There is no violation of the statute *unless* a policy condition limits uninsured motorist protection as to persons who otherwise qualify as insureds for liability purposes." *Famuliner v. Farmers Ins. Co.,* 619 S.W.2d 894, 897 (Mo.App. 1981) (emphasis added). Plaintiff here was otherwise qualified as an insured for liability purposes yet the policy placed limits on his uninsured motorist protection. Because Missouri law provides that exclusions such as the one before us are against public policy, we regard the exclusion as a nullity and read the policy as including appropriate uninsured motorist insurance coverage for reasons that appear hereafter.

In *Otto v. Farmers Ins. Co.,* 558 S.W.2d 713 (Mo.App.1977), the plaintiff purchased an insurance policy including liability, uninsured motorist, and other coverage. The policy applied only to injury to the insured while occupying a described "insured motor vehicle." The described vehicle was a car, which plaintiff later sold. He then purchased a motorcycle, which he never described as an insured vehicle under the policy. While riding the motorcycle, plaintiff collided with an uninsured motorist. Defendant insurance company rejected coverage because the motorcycle was never described as an insured vehicle, and the trial court granted summary judgment for defendant on this basis. The Missouri appellate court, based upon a careful reading of Mo.Rev.Stat. § 379.203, reversed and remanded, finding that the exclusion was contrary to public policy.

---

1. This case was tried before a magistrate judge with the consent of the parties pursuant to 28 U.S.C. § 636(c).

In Missouri, automobile liability insurance must provide "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury...." Section 379.203. The purpose of the statute is "to give persons insured by such coverage, when injured by an uninsured motorist, protection parallel to that which they would have had if they had been injured in an accident caused by a motor vehicle covered by the minimum liability requirements of the financial responsibility law." *Otto,* 558 S.W.2d at 717. Section 379.203 is a part of every policy of insurance to which it is applicable to the same effect as if it were written out in full in the policy itself, and an "insurer may limit the coverage afforded an insured under a policy only so long as doing so is not violative of public policy or interdicted by statute." *Otto,* 558 S.W.2d at 717.

*Otto* stressed the personal nature of uninsured motorist coverage, and distinguished it from automobile liability insurance. "The former is akin to accident insurance (albeit restricted to a limited type of accident) as it compensates for a loss suffered by an insured, as opposed to the latter which indemnifies an insured against liability for losses suffered by third parties." For this reason, "uninsured motorist insurance should not be confused as inuring to a particular vehicle as in the case of automobile liability insurance. To the contrary, uninsured motorist insurance inures to an individual insured for bodily injury inflicted by the tortious act of an uninsured motorist." 558 S.W.2d at 718.

The personal nature of the intended uninsured motorist coverage finds further support in the statute itself, for "[t]he statute commands that uninsured motorist coverage be part and parcel of every automobile liability policy issued 'for the protection of persons insured thereunder....'" 558 S.W.2d at 719. "Statutory authority for limited uninsured motorist coverage, as attempted by the policy exclusion under consideration, is nowhere to be found in Section 379.203...." *Id.* In addition, "the policy exclusion curtails uninsured motorist coverage without regard to the fact that the insured might otherwise

be 'legally entitled to recover damages' from the owner or operator of an uninsured motor vehicle." *Id.* *Otto* concluded that the policy exclusion was repugnant to the mandate of section 379.203.

*Otto* also noted that a majority of states support the view that exclusionary clauses restricting uninsured motorist coverage must fail in the face of public policy, while a few states consider whether the exclusions serve a legitimate business interest. 558 S.W.2d at 718–19. Other Missouri cases stress that uninsured motorist statutes are to be "liberally construed to accomplish their highly remedial purpose." *See, e.g., Webb v. State Farm Mut. Auto Ins. Co.,* 479 S.W.2d 148, 151 (Mo.App.1972).

There must exist an underlying automobile liability insurance policy to which the uninsured motorist coverage attaches. In *Otto,* while the insured sold his only described vehicle, the court found that the insurance policy was still in effect at the time of the accident. 558 S.W.2d at 716–17. Here, there seems to be no dispute about the validity of the underlying policy.

██ *Otto* requires reversal of this case. It holds that restrictions limiting uninsured motorist insurance coverage to designation of a particular car are invalid under Missouri law, and it follows that restrictions limiting uninsured motorist insurance coverage to the ownership status of a particular car are also invalid. While the facts of *Otto* are slightly different, because it did not involve ownership of the particular vehicle involved in the accident, but rather involved designation of an insured vehicle, the difference is without legal significance.

### III.

██ While the exclusion is void, the uninsured motorist insurance is still effective because, as we have noted, it is required under section 379.203 as "a part of every policy of insurance to which it is applicable to the same effect as if it were written out in full in the policy itself." *Otto,* 558 S.W.2d at 717. We therefore reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

HENLEY, Senior Circuit Judge, concurring dubitante.

With some misgiving I join in Judge Arnold's reversal of the judgment of the district court. The reversal relies in large part on *Otto v. Farmers Ins. Co.*, 558 S.W.2d 713 (Mo.App.1977), and upon *Famuliner v. Farmers Ins. Co.*, 619 S.W.2d 894, 897 (Mo. App.1981).

As Judge Gibson observes, *Otto* was not cited by the parties to this appeal and in *Famuliner* the Missouri Court of Appeals rejected an argument similar to that here made by appellants.

There may be few, if any, Missouri cases directly in point on the issue of whether in the circumstances of this case an insurer is required to provide coverage for unowned vehicles. However, the public policy of Missouri and dicta in *Famuliner* tend to persuade me that there is no violation of the Missouri uninsured motorist statute unless a policy condition limits uninsured motorist protection as to persons who otherwise qualify as insureds for liability purposes. 619 S.W.2d at 897. Thus, as indicated, I join in reversal of the judgment of the district court with remand for further proceedings.

JOHN R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent.

The court today looks at only part of the problem presented to us, and ignores completely the mandatory provisions of the Missouri Title Transfer Statute which provides that: "[i]n the event of a sale or transfer of ownership of a motor vehicle . . ., the holder of [the] certificate [of ownership] shall endorse on [the certificate] an assignment . . . and deliver [it] to the buyer at the time of the delivery to him of such motor vehicle."

Mo.Rev.Stat. § 301.210.1 (Supp.1993). The statute further provides that "the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be *fraudulent and void.*" *Id.* at § 301.210.4 (emphasis added). The transfer of the Buick to the Bernardos without transfer of the certificate of title is thus fraudulent and void. The Buick was not an owned auto under the uninsured motorist policy provisions entitling the Bernardos to such coverage.

The court holds that denying the Bernardos coverage is contrary to the public policy of Missouri as expressed in the Uninsured Motorist Statute. Mo.Rev.Stat. § 379.203.1. However, this case also presents an issue involving the public policy of Missouri with respect to the transfer of titles to automobiles. The transfer of title requirement, as embodied in Mo.Rev.Stat. § 301.210, is "an attempt to prevent fraud and deceit in the sale of cars and to hamper traffic in stolen vehicles." *Faygal v. Shelter Insurance Co.*, 689 S.W.2d 724, 726 (Mo.App.1985). To hold that the public policy behind the Uninsured Motorist Statute requires that coverage be extended to the Bernardos, under the circumstances of this case, would reward violation of the Missouri Title Transfer Statute.

The sole basis of the court's opinion is *Otto v. Farmers Insurance Co.*, 558 S.W.2d 713 (Mo.App.1977), a case which was not cited by either of the parties in their briefs. The court in *Otto* struck down a policy exclusion. However, the *Otto* court did not reach the issue which is determinative in this case. Here we are not determining the validity of a policy exclusion, but rather the validity of the terms which define the covered automobile, and whether the Bernardos are entitled to coverage under those terms.[2] In ruling in favor of the Bernardos, the court concluded

---

**2.** It is also significant that *Otto* involved an individual liability insurance policy, and the Bernardo policy was a commercial policy covering an automobile dealership and providing garage keeper's coverage. The policy declarations demonstrate that the uninsured motorist coverage premium was based upon seven automobile license plates, which must have been attached to the auto in order for it to be covered under the policy. The vehicle operated by the Bernardos at the time of the accident was not owned by the

dealership and pursuant to § 301.560.7 of Missouri Revised Statutes should not have been operated with a dealership license tag. Mo.Rev. Stat. § 301.560.7 (Supp.1993).

There are substantial differences between insurance needs of individuals and those in the automobile business. The insurance policy in this case was tailored to accommodate a dealership rather than an individual, and therefore the court's reasoning in *Otto* does not apply.

that the Uninsured Motorist Statute requires symmetry between liability and uninsured motorist coverage. Neither the language of the Uninsured Motorist Statute, nor the court's reasoning in *Otto* supports such a conclusion.

In *Famuliner*, 619 S.W.2d 894 (Mo.App. 1981) the court rejected an argument similar to the argument now asserted by the Bernardo's and accepted by the majority. The *Famuliner* court applied the Uninsured Motorist Statute and concluded that the statute is not violated "unless a policy condition limits uninsured motorist protection as to persons who otherwise qualify as insureds for liability purposes." *Id.* at 897. Famuliner claimed that he was entitled to uninsured motorists coverage under his parents' two automobile policies as a result of a collision while operating the motorcycle that he owned and insured. *Id.* at 896. In rejecting Famuliner's claim, the court held that although he was entitled to recover under both his own automobile and motorcycle policy, he could not recover under his parents' policies because those policies, while providing coverage for relatives resident in the parents' household, did not provide coverage to relatives who owned motor vehicles. *Id.* at 897. Similarly, the Northland policy while providing uninsured motorist coverage for vehicles owned by Bernardo, did not provide such coverage for vehicles which Bernardo did not own. The significance of *Famuliner* is that it recognizes that the Uninsured Motorist Statute does not prohibit the issuance of policies which limit the scope of uninsured motorist coverage.

The policy issued by Northland complied with the mandate of the statute in that it included uninsured motorist coverage. Mo. Rev.Stat. § 379.203.1. Northland's limitation of the uninsured motorist coverage to owned vehicles merely limits the category of vehicles covered under the policy and not the persons covered by the policy. Under the policy, Bernardo would have been entitled to the uninsured motorist coverage had the certificate of title been transferred to him as required by section 301.210 of the Missouri Revised Statutes, but that was not the case. Mo.Rev.Stat. § 301.210.

In this case, we are confronted with an insurance policy which provides uninsured motorist coverage only for owned vehicles. The Bernardos do not qualify under the terms of the policy. I find no support for the majority's conclusion that the Uninsured Motorist Statute requires symmetry between liability coverage and uninsured motorist coverage. Thus, the court errs in its unnecessarily broad application of the Uninsured Motorist Statute and its complete disregard for the mandatory Title Transfer Statute.

I would affirm the judgment of the district court.