296 F.Supp.2d 1037 (2003)
Terry E. BLUM, Plaintiff,
v.
ALLSTATE INSURANCE COMPANY, Defendant.
No. 4:03CV401 CDP.
United States District Court, E.D. Missouri, Eastern Division.
December 15, 2003.
*1038 Kevin A. Sullivan, Deeba and Sauter, St. Louis, MO, for Plaintiff.
David W. Cooper, Brown and James, P.C., St. Louis, MO, for Defendant.

MEMORANDUM OPINION
PERRY, District Judge.
Plaintiff Terry Blum seeks a declaration of his rights under the uninsured motorist provision of an auto insurance policy that his parents purchased from defendant Allstate Insurance Company. He also seeks judgment in the amount of $150,000, plus prejudgment interest on the policy. The parties agreed to try this matter upon the written record, and they have stipulated the facts of this case.
I conclude that Terry Blum may "stack" the uninsured motorist coverage for each of the three automobiles covered by his parents' policy. The policy provisions that prohibit stacking when the insured is injured in an auto other than one of the covered autos violates the public policy of Missouri. I conclude, however, that public policy does not require that Blum recover the full $50,000 coverage on all three automobiles, because the public policy is violated only to the extent the policy attempts to provide less than $25,000 in uninsured motorist coverage. Thus, Blum can recover an initial $50,000 and then can stack an additional $25,000 for each of the other two covered vehicles, for a total award of $100,000. Finally, I find that this award should not be offset by payments Blum collected under another policy issued by Shelby Casualty Insurance Company. I will therefore enter judgment in Blum's favor in the total amount of $109,645.12, which includes prejudgment interest.

FACTS
The parties stipulated that the following facts apply to this case:
William and Francis Blum owned an automobile insurance policy, Policy Number 1 XXXXXXXXXX-XX, issued by defendant Allstate Insurance Company. The policy covered three vehicles that the Blums owned. Each vehicle was insured for $50,000 under the policy provision providing for uninsured motorist coverage.
The Blums' son, plaintiff Terry Blum, was involved in an auto accident on September 7, 2002, in St. Francois County, Missouri. At the time of the accident, Blum lived with his parents. William Blum submitted an affidavit, to which Allstate does not object, claiming that Terry lived with him and his wife for most of his life, and that he expected that Terry would have insurance coverage equal to the coverage he and his wife would have. Terry Blum often used his parents' vehicles. The vehicle in which Terry Blum was a passenger on September 7, 2002, however, was an uninsured automobileneither owned nor insured by Terry Blum or his parents.
During the accident, Terry Blum was ejected through the windshield of the vehicle. He was airlifted to Barnes Hospital and admitted to the intensive care unit. He was hospitalized for eleven days. Blum sustained a brain injury and other serious and disabling injuries as a result of the accident. Costs for Blum's care and treatment exceed $90,000. Blum's medical expenses, lost wages and other damages exceed $175,000.
Terry Blum had his own car, which was insured by Shelby Casualty Insurance Company, including uninsured motorist coverage in the amount of $25,000. Blum collected $25,000 under the Shelby Casualty policy, and then made a claim under his parents' Allstate policy for $150,000 in *1039 uninsured motorist coverage. Allstate denied Terry Blum's claim under the policy, claiming that Blum is entitled, at most, to $25,000 in uninsured motorist benefits the value of the uninsured motorist coverage for one vehicle under the Allstate policy, offset by the $25,000 Blum received under his Shelby Casualty policy.
At the time of the accident, the Allstate policy was in full force and effect, and it did not exclude Terry E. Blum as a driver with respect to any of the vehicles. The parties do not dispute that Terry Blum was a "resident" under the policy, although he was not a named insured. The Blums paid all policy premiums over the years, including a separate premium for the uninsured motorist coverage on each vehicle.
This case involves the following provisions of the Blums' Allstate policy:
Definitions Used Throughout This Policy
* * * * * *
8. "Resident" means a person who physically resides in your household with the intention to continue residence there...
Allstate Policy at 3.
Uninsured Motorist Coverage
Coverage SS
* * * * * *
Additional Definitions for Part 3
1. "Insured Person(s)" means:
(a) you and any resident relative ...
Limits of Liability
* * * * * *
If none of the autos shown on the Policy Declaration is involved in the accident, the highest limits of liability shown on the Policy Declaration for any one auto will apply.
Damages payable under Uninsured Motorist Insurance shall be reduced by all amounts paid or payable by or on behalf of any person or organization that may be legally responsible for the bodily injury...
Allstate Policy at 13 (emphasis in original).

DISCUSSION
In this diversity action, Missouri law provides the rules for construing the insurance policy at issue. Altru Health Sys. v. American Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir.2001). When interpreting state law, I must first consider any pertinent decisions of the Missouri Supreme Court; if none are available, I will look to the state appellate court decisions and other reliable state law authorities. My task is to determine how the Missouri Supreme Court would decide the issue at hand. See Lindsay Mfg. Co. v. Hartford Accid. & Indem. Co., 118 F.3d 1263, 1267-68 (8th Cir.1997).
Disputes arising from interpretations and application of an insurance policy are matters of law to be determined by the court. McCormack Baron Mgmt. Servs., Inc. v. American Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo.1999) (en banc). "Because insurance policies are designed to provide protection, they will be liberally interpreted to grant rather than deny coverage." Cawthon v. State Farm Fire & Cas. Co., 965 F.Supp. 1262, 1264 (W.D.Mo.1997); see also Henges Mfg., LLC v. Amerisure Ins. Co., 5 S.W.3d 544, 545 (Mo.Ct.App.1999).
When an insurance company relies upon a policy exclusion to deny coverage, the burden is on the insurance company to prove applicability of the exclusion clause, which is strictly construed against the insurer. Century Fire Sprinklers, Inc. v. CNA/Transportation Ins. Co., 23 S.W.3d 874, 877 n. 1 (Mo.Ct.App.2000). When the terms of an insurance policy are unambiguous, however, "the rules of construction do not apply, and absent public policy to the contrary, the policy will be enforced as *1040 written." Schoettger v. American Nat. Prop. and Cas. Co., 10 S.W.3d 566, 569 (Mo.App.2000).
This particular anti-stacking provision has not been considered by the Missouri courts. Stacking "refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." Niswonger v. Farm Bureau Town & Country Ins. Co., 992 S.W.2d 308, 313 (Mo.Ct.App.1999). Allstate argues that Blum may not stack the coverages for the three vehicles, because the policy provides that if none of the covered autos is involved in the accident, then its liability under the uninsured motorist provision is limited to the coverage for one auto$50,000. Blum argues that this provision limiting recovery violates Missouri public policy and should have no effect.
Missouri requires all automobile insurance policies issued in the state to carry uninsured motorist coverage. Mo.Rev. Stat. § 379.203, the Motor Vehicle Financial Responsibility Law, provides in pertinent part:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.
Mo.Rev.Stat. § 379.203(1). The limits for bodily injury or death of Mo.Rev.Stat. § 303.030.5 are $25,000 per person, $50,000 per occurrence and for property damage in the amount of $10,000. All policies of liability insurance extend uninsured motorist coverage to "persons insured thereunder." Lair v. American Family Mutual Ins. Co., 789 S.W.2d 30, 33 (Mo.1990) (en banc).
The uninsured motorist coverage mandated by the financial responsibility law is personal in naturein other words, it provides coverage to the insured person, not to a particular automobile. In Otto v. Farmers Ins. Co., 558 S.W.2d 713, 718 (Mo.Ct.App.1977), the Missouri Court of Appeals cautioned that "uninsured motorist insurance should not be confused as inuring to a particular vehicle as in the case of automobile liability insurance. To the contrary, uninsured motorist insurance inures to an individual insured for bodily injury inflicted by the tortious act of an uninsured motorist." See also Bernardo v. Northland Ins. Co., 45 F.3d 272, 274 (8th Cir.1995) (interpreting Otto as holding that "restrictions limiting uninsured motorist coverage to designation of a particular car are invalid under Missouri law. . .").
Policy provisions that seek to limit stacking of uninsured motorist policies will not be enforced if they violate the public policy expressed in the financial responsibility law. Cameron Mutual Ins. Co. v. Madden, 533 S.W.2d 538 (Mo.1976). Cameron held that, although the insurance contract limited uninsured motorist recovery to only the highest value of uninsured motorist coverage for one vehicle, such a limiting provision violated public policy as expressed in the financial responsibility law. "Missouri public policy flowing from this statute requires that multiple uninsured motorist coverages must be allowed *1041 to be stacked, and prevents insurers from including policy language denying such stacking." Niswonger, 992 S.W.2d at 313 (citing Cameron). Whether multiple vehicles are covered under one policy or under separate policies is irrelevant to the question of stacking. Cameron, 533 S.W.2d at 545.
Allstate principally relies on two opinions by the Missouri Court of Appeals for its argument that the stacking limitation here is valid: Famuliner v. Farmers Insurance Co., Inc., 619 S.W.2d 894, 897 (Mo.App.1981), and Adams v. Julius, 719 S.W.2d 94 (Mo.Ct.App.1986). Both cases are distinguishable.
Famuliner did not involve stacking, but rather was a coverage dispute turning on the definition of "insured." The plaintiff was living with his parents when he was injured in an accident with an uninsured motorcyclist while driving his separately owned and insured motorcycle. As in the present case, the plaintiff collected under a policy held in his own name, and then sought to collect under the uninsured motorist provisions of his parents' policy. He challenged the policy provision that provided coverage for "relatives" but defined a "relative" as "a relative of the named insured who is a relative of the same household, provided neither such relative nor his spouse owns an automobile." Id. at 896. From this definition, the court held that plaintiff "was not an insured under his parents' policies" and the challenged policy conditions did not offend the public policy established by the financial responsibility law. Id. According to the court, "[t]here is no violation of the statute unless a policy condition limits uninsured motorist protection as to persons who otherwise qualify as insureds for liability purposes." Id.
Adams also did not involve attempts to limit stacking, but instead turned on whether the plaintiff was an "insured." Plaintiff was the son of the named policy-holder, but a policy endorsement specifically excluded him from liability coverage except for a narrow categorywhen he "used" an automobile, so long as he did not "drive" or "operate" the automobile. 719 S.W.2d at 100. He sought to recover under the uninsured motorist coverage of the policy when he was injured in an accident involving a motorcycle that was not covered under the policy. The court upheld the insurer's denial of plaintiff's claim because "§ 379.203 does not require that uninsured motorist coverage be provided in all situations to persons who qualify as insureds for liability coverage in only limited circumstances." 719 S.W.2d at 100.
Famuliner and Adams cannot be extended to the facts of this case. Blum is an insured under the policy for all purposes: he was not excluded under most circumstances as was the Adams plaintiff, and the definition of "insured" did not exclude people who owned other cars, as did the Famuliner policy. The Missouri Supreme Court has resisted Allstate's broad interpretation of Famuliner, interpreting the case as holding only that "where an individual lacked status as an insured, named or otherwise, under the primary coverage of the policy, there was no uninsured coverage for that individual." Shepherd v. American States Ins. Co., 671 S.W.2d 777, 780 (Mo.1984) (en banc). Here Allstate concedes both that Blum is an "insured" who can recover under one uninsured motorist coverage, and that he is an "insured" who could stack all three coverages if he had been involved in an accident with an uninsured motorist while driving a listed automobile.
I conclude that to the extent the policy attempts to limit stacking to situations where a listed car is involved in the accident, it violates the public policy of Missouri. This conclusion is supported by Husch v. Nationwide Mut. Fire Ins. Co., *1042 772 S.W.2d 692, 694 (Mo.Ct.App.1989), which invalidated a policy attempting to limit uninsured motorist stacking to the named insureds. In that case, the policy covered two cars, and had a provision that purported to allow the named insureds to stack the uninsured motorist coverages, but did not allow other covered people to do so, although the policy covered relatives and occupants of the named insured's home for other purposes. The Court of Appeals found this limitation violated Missouri public policy; therefore the plaintiff, who was a minor child of the named insured, could "stack" the coverage. Although Blum is not a minor child, I find Husch persuasive.
Further, the text of the statute guides my decision. The financial responsibility law requires uninsured motorist coverage in every automobile liability policy. Mo.Rev.Stat. § 379.203. The coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury ... resulting therefrom." Id. The "resulting therefrom" language means "resulting from the uninsured motor vehicle," or "resulting from the operation of the uninsured motor vehicle." Thornburg v. Farmers Ins. Co., 859 S.W.2d 847, 849 (Mo.Ct.App.1993). To allow Allstate's limitation to stand would be contrary to the statute and antithetical to the notion, as set forth in Otto, that uninsured motorist coverage is personal, and not tied to a specific vehicle. The provision here impermissibly narrows the coverage mandated for every policy of liability insurance by Mo.Rev.Stat. § 379.203. This attempted limitation is against public policy and is void up to the policy amounts required by the financial responsibility law.
The financial responsibility statute only requires $25,000 in uninsured motorist coverage; this policy provides $50,000 in coverage for each insured vehicle. Although I find that Blum may stack the three coverages, I do not agree that he can recover the full $50,000 on each of them. "While § 379.203 dictates the minimum requirements for uninsured motorist coverage in motor vehicle liability policies, the parties to an insurance contract are always free to implement policies which exceed the statutory requirements." Ezell v. Columbia Ins. Co., 942 S.W.2d 913, 919 (Mo.App. 1996); Omaha Indemnity Co. v. Pall, Inc., 817 S.W.2d 491, 498 (Mo.Ct.App.1991); see also Tatum v. Van Liner Ins. Co. of Fenton, Missouri, 104 F.3d 223, 225 (8th Cir. 1997). The parties exceeded the minimum requirement when they contracted for $50,000 coverage as to each vehicle.
The public policy is violated only by the policy's attempt to provide coverage below the statutory minimum of $25,000; public policy does not require insurance companies to provide coverage above that minimum. Therefore, in addition to the $50,000 value of one covered vehicle, Blum is entitled to $25,000the statutory minimum from each of the two other covered vehicles. See Ezell, 942 S.W.2d at 919; accord, American Standard Ins. Co. v. Bracht, 103 S.W.3d 281, 286-288 (Mo.Ct.App.2003)(following Ezell to invalidate set-off limitation on uninsured motorist coverage only "to the extent it would result in an infringement of the minimum liability coverage required by" the statute); but see Dawson v. Denney-Parker, 967 S.W.2d 90, 92 (Mo.Ct.App.1998)(declining to apply Ezell to invalid limitation requiring physical contact).
The parties additionally dispute whether any amount due Blum under the Allstate policies should be offset by the $25,000 he received under his Shelby Casualty policy. The language of the policy with respect to offsetting payments is as *1043 follows: "Damages payable under Uninsured Motorist Insurance shall be reduced by all amounts paid or payable by or on behalf of any person or organization that may be legally responsible for the bodily injury ..." Allstate Policy at 13. Blum argues that the provision violates Missouri public policy and is therefore void, while Allstate argues that Shelby, upon Blum's demand, was "legally responsible for the bodily injury" because, as a matter of law, it stood in the shoes of the uninsured tortfeasor. The result urged by Blum is correct, but I disagree with his reasons why.
Allstate cites Stafford v. Kite, 26 S.W.3d 277, 280-81 (Mo.Ct.App.2000) in support of its argument, but Stafford cannot be read so broadlyit merely stands for the proposition that when an insured sues an alleged uninsured tortfeasor, the insurer may intervene in the lawsuit to protect its interest in the potential payment of any judgment against the alleged uninsured tortfeasor. Id. Allstate's approach unnecessarily blurs the distinction between causes of action against the uninsured motorist for the injury, which would be in tort, and an action to collect under an uninsured motorist policy, which is a contractual claim. Missouri law has long recognized these actions as separate and distinct. See Oates v. Safeco Ins. Co., 583 S.W.2d 713, 718 (Mo.1979) (en banc); Williams v. Casualty Reciprocal Exchange, 929 S.W.2d 802, 809 n. 5 (Mo.App. 1996). I will therefore not offset the amounts collected from Blum's Shelby Casualty policy against the Allstate proceeds because Shelby Casualty was not the party "legally responsible" for Blum's bodily injury. Shelby had a contractual liability to pay off on its uninsured motorist coverage, and that obligation is distinct both from the uninsured tortfeasor's responsibility for Blum's injuries and from Allstate's contractual obligation. No set-off is required.
Finally, Blum seeks 9% pre-judgment interest, pursuant to Mo.Rev.Stat. § 408.020, on whatever amount he is owed by Allstate since the day of his demand under the policy, which was November 21, 2002. Allstate does not challenge plaintiff's request, which I will grant.
I find that plaintiff is entitled to coverage under his parents policy, and that he is entitled to an award of $100,000 under policy number 1 XXXXXXXXXX-XX, plus 9% interest from the date of the original demand, for a total judgment of $109,645.12.
A separate Judgment in this amount is entered this same day.

JUDGMENT
For the reasons set forth in the Memorandum Opinion issued this same day,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff Terry E. Blum is entitled to stack the uninsured motorist coverage under Allstate Policy Number 1 XXXXXXXXXX-XX, issued to William and Francis Blum, and that he is entitled to collect $100,000 on the policy, along with prejudgment interest; plaintiff Terry E. Blum shall therefore recover from defendant Allstate Insurance Company judgment in the amount of $109,645.12, and his costs of this action.