**SENTEX SYSTEMS, INC., a California corporation, Plaintiff–Appellee,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, a Connecticut corporation, Defendant–Appellant.**

**No. 95–55980.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1996.

Decided Aug. 19, 1996.

Joseph P. Mascovich, Crosby, Heafy, Roach & May, Oakland, California; Kelley K. Beck, Hawkins, Schnabel, Lindahl & Beck, Los Angeles, California, for defendant-appellant.

Carol L. Meedon, Callahan, Blaine & Williams, Irvine, California, for plaintiff-appellee.

Before: HUG, Chief Judge, and SCHROEDER and HAWKINS, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an action by an insured against an insurer for breach of the insurer's duty to defend a suit which the insured claims triggered coverage under the policy provisions relating to "advertising injury." This is a diversity action controlled by California law concerning the interpretation of insurance contracts. The district court entered summary judgment in favor of the insured, Sentex Systems, and the insurer, Hartford Accident and Indemnity Company, appeals.

The facts and background of this case are fully set forth in the published opinion of the district court holding the insurer liable for the costs of defending the suit, including the amount paid in settlement. *Sentex Sys., Inc. v. Hartford Accident and Indem. Co.*, 882 F.Supp. 930, 933–35 (C.D.Cal.1995). We review the district court's grant of summary judgment de novo. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). We affirm, although upon somewhat narrower grounds than those relied upon by the district court.

Sentex designs and manufactures telephone entry security systems for buildings and gated communities. In 1990, Electronic Security Services, Inc. ("ESSI"), a competitor, brought an action in Maryland against Sentex and one of its employees, Paul Colombo ("Colombo"), who had formerly been a key employee of ESSI. The complaint alleged that Sentex had induced Colombo to breach his non-competition agreement with ESSI, and that Sentex, through Colombo, misappropriated ESSI's trade secrets, in-

**580**

cluding customer lists, marketing techniques, and other inside and confidential information. According to ESSI's complaint, Sentex and Colombo used the information to solicit ESSI's customers.

Sentex, both after the filing of ESSI's complaint, and later, after discovery, requested Hartford to defend the suit, and on both occasions Hartford refused. Sentex and ESSI eventually settled the underlying action for $35,000, and Sentex then filed this action against Hartford.

Hartford's Commercial General Liability ("CGL") policies provide coverage for "sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury' to which this insurance applies." The insurance applies to "advertising injury" only if the injury is "caused by an offense committed . . . during the policy period . . . [i]n the course of advertising . . . goods, products or services." According to the CGL policies, "advertising injury" is an injury arising out of any of the offenses enumerated in the policies, including the "[m]isappropriation of advertising ideas or style of doing business."

■ In this case, the district court held that Sentex was engaged in "advertising activities" and that ESSI's alleged injuries were caused by these activities. *Sentex Sys., Inc.*, 882 F.Supp. at 940–45. These rulings are not challenged on appeal. Rather, Hartford's principal contention is that the district court erred by granting summary judgment for Sentex because "advertising injury," defined in part in the policy as arising out of the "misappropriation of advertising ideas," includes only alleged wrongdoing that involves the text, words, or form of an advertisement.

Hartford's definition is apparently drawn from the language in this court's decision in *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir.1994), where we considered whether a patent infringement claim came within the provisions of several policies covering "piracy" that arose out of advertising. That case came to the unremarkable conclusion that patent infringement was "not an act of piracy arising out of or committed in advertising and thus was not covered by the policies." *Id.* at 1505. We do not find the case helpful here, where patent infringement is not involved, causation is not at issue, and the relevant policy coverage is "misappropriation of advertising ideas."

■ There are no California cases construing the policy provisions at issue in this case. California law does require us, however, to give policy provisions their ordinary meaning. *See Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 545, 833 P.2d 545, 552 (1992). This policy's language, given its ordinary meaning, does not limit itself to the misappropriation of an actual advertising text. It is concerned with "ideas," a broader term.

■ ESSI's complaint against Sentex alleged that Sentex had obtained from Colombo "knowledge, information and trade secrets, including customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information. . . ." In subsequent depositions, ESSI's president testified that the company was contending there had been a misappropriation of trade secrets for use in Sentex's sales materials. Although ESSI's president disclaimed having seen its trade secrets in Sentex's written sales materials, he testified that the information was used to market Sentex products in other ways. In this day and age, advertising cannot be limited to written sales materials, and the concept of marketing includes a wide variety of direct and indirect advertising strategies. It is significant that ESSI's claims for misappropriation of trade secrets relate to marketing and sales and not to secrets relating to the manufacture and production of security systems. *Cf. Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 84 F.3d 1105, 1107–08 (9th Cir.1996) (holding that an insurer had no duty to defend under an advertising-injury provision where the third party's allegations concerned the misappropriation of trade secrets which related to the methods for processing fruit rather than advertising or marketing). While we may agree with Hartford that the mere misappropriation of customer mailing lists, standing alone, may not bring a complaint within the scope of possible coverage for

"advertising injury" as "misappropriation of advertising ideas," it is clear that the scope of ESSI's lawsuit was much broader.

We thus agree with the district court that Hartford breached its duty to defend under these policies. We do not necessarily agree with the district court's broader conclusion, however, that allegations of misappropriation of a customer list, because it comes within common law concepts of unfair competition, can alone trigger coverage under the language of these policies pertaining to "misappropriation of advertising ideas." *See Sentex Sys., Inc.,* 882 F.Supp. at 942–43. Because we conclude that ESSI's suit raised a potential for liability under the offense of "misappropriation of advertising ideas," we need not consider whether ESSI's suit raised a potential for liability under any other enumerated offenses. *See id.* at 944–45.

**AFFIRMED.**